**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC., | |
| Plaintiffs, | Case No. 1:23-cv-11268-KPF |
| vs. | |
| GEM GLOBAL YIELD LLC SCS, GEM YIELD BAHAMAS LIMITED, and CHRISTOPHER F. BROWN, | |
| Defendants. | |
| GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS, | |
| Petitioners, | Related Case No. 1:24-cv-001120-KPF |
| vs. | |
| MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC., | |
| Respondents. | |

**PLAINTIFFS-RESPONDENTS' MEMORANDUM OF LAW**
**REGARDING ISSUES RAISED DURING MARCH 21, 2024 CONFERENCE**

**THE BASILE LAW FIRM, P.C.**
Mark R. Basile
Waleed Amer
390 N. Broadway, Suite 140
Jericho, New York 11753
(516) 455-1500
mark@thebasilelawfirm.com
waleed@thebasilelawfirm.com

**MCDERMOTT WILL & EMERY LLP**
David K. Momborquette
Antonios G. Koulotouros
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com
akoulotouros@mwe.com

*Attorneys for Plaintiffs-Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc.*

## **TABLE OF CONTENTS**

I.    FACTUAL BACKGROUND ............................................................................................2

     A.    The Arbitration..................................................................................................2

     B.    The Liability Award...........................................................................................2

     C.    The Interim Award.............................................................................................4

II.   THE COURT SHOULD STAY CONFIRMATION OF GEM'S APPLICATION
     TO CONFIRM THE INTERIM AWARD AND ANY DAMAGES
     DETERMINATION BY THE ARBITRATOR PENDING THIS COURT'S
     RESOLUTION OF THE SECURITIES ACTION...............................................................5

     A.    The Arbitration Does Not Have Preclusive Effect on the Securities Action...........5

          1.    Plaintiffs' Claims in the Securities Action are Not Barred by Res
              Judicata ............................................................................................5

          2.    Plaintiffs' Claims in the Securities Action are Not Barred by
              Collateral Estoppel...........................................................................10

              i.    The Issue of Whether the Warrant was Made in Violation
                   of Section 15(a) of the Exchange Act was Not Raised in the
                   Arbitration.....................................................................11

              ii.   The Issue of Whether the Warrant was Made in Violation
                   of Section 15(a) of the Exchange Act was Not "Actually
                   Litigated and Decided" in the Arbitration ......................13

              iii.  Plaintiffs Did Not Have a Full and Fair Opportunity to
                   Litigate the 15(a) Issue in the Arbitration, Nor was
                   Resolution of that Issue Necessary to Support the Liability
                   Award in the Arbitration................................................15

     B.    This Court Should Stay GEM's Application and Any Damages
          Determination by the Arbitrator Pending Resolution of the Securities
          Action...............................................................................................17

III.  THERE IS NO AUTHORITY THAT STANDS FOR THE PROPOSITION
     THAT A FEDERAL COURT POSSESSES THE AUTHORITY TO ORDER
     THE TYPE OF RELIEF ENTERED BY THE ARBITRATOR IN THE
     INTERIM AWARD...................................................................................................19

IV.   CONCLUSION..........................................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*BBS Norwalk One, Inc. v. Raccolta, Inc.*,
   117 F.3d 674 (2d Cir. 1997)......................................................................................10, 11

*Bear, Stearns & Co. v. 1109580 Ontario, Inc.*,
   409 F.3d 87 (2d Cir. 2005)..............................................................................................10

*Beechwood Restorative Care Ctr. v. Leeds*,
   436 F.3d 147 (2d Cir. 2006)........................................................................................16, 17

*Boguslavsky v. Kaplan*,
   159 F.3d 715 (2d Cir. 1998)........................................................................................11, 12

*Citadel Broad. Corp. v. Dolan*,
   2009 WL 4928935 (S.D.N.Y. Dec. 21, 2009) ..............................................................8, 9

*Classic Autos., Inc. v. Oxford Res., Corp.*,
   204 A.D.2d 209 (1st Dep't 1994) ....................................................................................9

*Corbett v. MacDonald Moving Servs.*,
   124 F.3d 82 (2d Cir. 1997)..............................................................................................10

*Cty. Natwest Sec. Corp. USA v. Jesup, Josephthal & Co.*,
   180 A.D.2d 468 (1st Dep't 1992) ..................................................................................20

*Diatek Licensing LLC v. Estrella Media, Inc.*,
   2022 WL 5108090 (S.D.N.Y. Oct. 4, 2022)............................................................17, 18, 19

*Dundon v. Komansky*,
   15 F. App'x 27 (2d. Cir. 2001) ......................................................................................11

*Eastside Church of Christ v. Nat'l Plan, Inc.*,
   391 F.2d 357 (5th Cir. 1968) ........................................................................................13

*Emilio v. Spring Spectrum, L.P.*,
   68 F. Supp. 3d 509 (S.D.N.Y. 2014)......................................................................11, 13, 14

*F.T. Mar. Servs. Ltd. v. Lambda Shipholding Ltd.*,
   533 F. Supp. 3d 149 (S.D.N.Y. 2021)............................................................................11

*Finn v. Barney*,
   2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) ..............................................................18, 19

*Golden v. O'Melveny & Myers LLP*,
   2020 WL 1640020 (C.D. Cal. Apr. 1, 2020) ................................................................15

*Golden v. O'Melveny & Myers LLP*,
   2021 WL 3466044 (9th Cir. Aug. 6, 2021)...............................................................15

*Goodson v. Sedlack*,
   212 F. Supp. 2d 255 (S.D.N.Y. 2002).....................................................................15

*Habitations Ltd. v. BKL Realty Sales Corp.*,
   160 A.D.2d 423 (1st Dep't 1990) ...........................................................................20

*Interoceanica Corp. v. Sound Pilots, Inc.*,
   107 F.3d 86 (2d Cir. 1997).....................................................................................10

*John's Insulation, Inc. v. Siska Constr. Co.*,
   671 F. Supp. 289 (S.D.N.Y. 1987)............................................................................7

*Kappel v. Comfort*,
   914 F. Supp. 1056 (S.D.N.Y. 1996).......................................................................18

*Kuehne + Nagel Inc. v. Hughes*,
   2022 WL 2274353 (S.D.N.Y. June 23, 2022) ..........................................................5

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)...............................................................................................17

*Lobban v. Cromwell Towers Apartments, Ltd. P'ship*,
   345 F. Supp. 3d 334 (S.D.N.Y. 2018)......................................................................8

*McDonald v. City of W. Branch, Mich.*,
   466 U.S. 284, 285 (1984).......................................................................................16

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970).........................................................................................12, 13

*Nat'l Air Cargo Grp., Inc. v. Maersk Line Ltd.*,
   2019 WL 4735426 (S.D.N.Y. Sept. 27, 2019)....................................................9, 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Advanced Emp't Concepts, Inc.*,
   269 A.D.2d 101 (1st Dep't 2000)...........................................................................21

*O'Neill v. Merrill Lynch, Pierce, Fenner & Smith*,
   654 F. Supp. 347 (N.D. Ill. 1987) ..........................................................................11

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979)...............................................................................................10

*Pike v. Freeman*,
   266 F.3d 78 (2d Cir. 2001).............................................................................6, 7, 8

*Polish Am. Res. Corp. v. Byrczek*,
   270 A.D.2d 96 (1st Dep't 2000) .............................................................................20

*Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*,
    1993 WL 42786 (S.D.N.Y. Feb. 17, 1993)................................................................16

*Postlewaite v. McGraw-Hill, Inc.*,
    333 F.3d 42 (2d Cir. 2003)...........................................................................10, 11

*Purjes v. Plausteiner*,
    2016 WL 552959 (S.D.N.Y. Feb. 10, 2016)...........................................................6, 7

*Redd v. Leftenant*,
    2017 WL 3973926 (E.D.N.Y. Sept. 7, 2017) .........................................................15

*Redd v. Leftenant*,
    737 F. App'x 603 (2d Cir. 2018) ........................................................................15

*Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*,
    678 F.2d 552 (5th Cir. 1982) ............................................................................13

*In re Ridgemour Meyer Properties, LLC*,
    2016 WL 5395836 (Bankr. S.D.N.Y. Sept. 27, 2016)...............................................9

*SEC v. Almagarby*,
    92 F.4th 1306 (11th Cir. 2024) ........................................................................15

*Sircar v. City Univ. of New York*,
    No. 1:23-cv-06304 (KPF) (S.D.N.Y. Oct. 27, 2023), ECF No. 13...........................5

*Walzer v. Muriel Siebert & Co.*,
    2010 WL 4366197 (D.N.J. Oct. 28, 2010)...........................................................16

**Statutes and Other Authorities**

9 U.S.C. § 9........................................................................................................19

9 U.S.C. § 10......................................................................................................19

9 U.S.C. § 207....................................................................................................19

AAA Rule R-37 ..........................................................................................4, 20, 21

AAA Rule R-5 ......................................................................................................9

Fed. R. Civ. P. 64................................................................................................19

N.Y. CPLR § 6210.............................................................................................20

N.Y. CPLR § 6211........................................................................................20, 21

N.Y. CPLR § 6212.............................................................................................21

N.Y. CPLR § 6215.............................................................................................21

N.Y. CPLR § 6216 .................................................................................................21

N.Y. CPLR § 7502 .................................................................................19, 20, 21

Restatement (Second) of Judgments § 29 (1981) ...............................................16

Section 3(a)(5)(A) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78c(a)(5)(A) ............................................................................14

Section 15(a) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78o(a)(1) .......................................................................... *passim*

Section 20(a) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78t(a) ..................................................................................5, 11

Section 29(b) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78cc(b) ............................................................................. *passim*

Pursuant to the Court's directive made during the March 21, 2024 conference held in the above-captioned matters (the "Conference"), Plaintiffs-Respondents Mullen Technologies, Inc. ("MTI") and Mullen Automotive, Inc. ("MAI," and together with MTI, "Plaintiffs") respectfully submit this Memorandum of Law to address two specific issues: (1) whether the above-captioned actions and/or Plaintiffs' ongoing AAA arbitration (the "Arbitration") with Defendants-Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM")[1] should be stayed; and (2) whether this Court has the authority to order MAI to transfer $24 million into an escrow account in accordance with the second interim measures arbitration award issued by the arbitrator in the Arbitration on or about January 24, 2024 (the "Interim Award").

As detailed below, the Court should stay the confirmation of the Interim Award and any damages determination by the arbitrator pending this Court's resolution of the Securities Action.[2] In addition, there is no authority that would suggest that this Court possesses the power to enter an order akin to the Interim Award.

---

[1] Christopher F. Brown ("Mr. Brown," and together with GEM, the "Defendants") is also named as a defendant in Plaintiffs' action in this Court seeking rescission of the Warrant, captioned *Mullen Technologies, Inc., et al. v. GEM Global Yield LLC SCS, et al.*, No. 1:23-cv-11268-KPF (the "Securities Action").

[2] Capitalized terms that are not defined herein have the meanings set forth in Plaintiffs' previous memorandum of law (the "Previous Memo"), which was filed in opposition to GEM's application to confirm the Interim Award (ECF No. 1, the "Application") and in support of Plaintiffs' cross-motion to vacate the Interim Award and to stay GEM's Application (ECF No. 32, the "Cross-Motion"). *See* Previous Memo, *GEM Yield Bahamas Limited, et al. v. Mullen Technologies, Inc., et al.*, No. 1:24-cv-01120-KPF (S.D.N.Y. Mar. 1, 2024), ECF No. 37. The Previous Memo, Application, and Cross-Motion were all filed in GEM's related action (the "Related Action") seeking confirmation of, among other arbitration awards, the Interim Award. *See GEM Yield Bahamas Limited, et al. v. Mullen Technologies, Inc., et al.*, No. 1:24-cv-01120-KPF. The Declaration of David K. Momborquette, which was also previously filed in the Related Action (*see* ECF No. 38), is referred to throughout as the "Momborquette Decl." The Declaration of Alexander L. Cheney, which was previously filed in support of GEM's Application in the Related Action (*see* ECF No. 5), is referred to throughout as the "Cheney Decl."

I.      **FACTUAL BACKGROUND**

A.      **The Arbitration**

GEM commenced its Arbitration against MTI on September 27, 2021.  (*See* Application at ¶ 18.)  Several months later, GEM filed an Amended Statement of Claim, which added MAI as a party to the Arbitration and asserted five claims against both MTI and MAI, including a series of claims under the SPA and RRA and a claim for breach of the Warrant based on Plaintiffs' alleged repudiation of their obligation to sell GEM shares pursuant to the Warrant.  (*See id.*; *see also* Cheney Decl., Ex. 6 at ¶ 24.)  On February 1, 2022, Plaintiffs filed an Answer to GEM's Amended Statement of Claim.  (*See* Securities Action at ECF No. 26-3.)  ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  Plaintiffs never referenced Sections 15(a) or 29(b) of the Exchange Act in their Answer.  Nor did they subsequently pursue a defense or claim under those provisions.

B.      **The Liability Award**

On November 17, 2023, the arbitrator issued the Liability Award.  (*See* Cheney Decl., Ex. 6.)  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Notably, however, the arbitrator never issued an award for breach of the Warrant.  ████████████

████████████████████████████████████████████████████████████████

██████████████    In describing GEM's prayer for relief, for example, the arbitrator omitted any

reference to a claim for breach of contract under the Warrant, and instead, stated that ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████   Despite that

language, however, the Liability Award never explicitly analyzed or adjudicated the merits of any

defenses or claims available to Plaintiffs under Sections 15(a) and 29(b) of the Exchange Act.  Nor

did the arbitrator make any findings regarding GEM's status as an unregistered securities dealer.

C.   <u>The Interim Award</u>

On December 15, 2023, GEM filed with the arbitrator an application for interim measures.

(*See* Application at ¶ 26.) ████████████████████████████████████████

███████████████████████████████   On January 24, 2024, the arbitrator issued

the Interim Award and ordered MAI to deposit $24,114,921 into escrow.  (*See id.* at ¶¶ 1, 27, 33;

Cheney Decl., Ex. 1.)  The arbitrator derived his authority to enter the Interim Award from Rule

R-37 of the AAA Rules.  (*See id.* at ¶ 21; *see also* Momborquette Decl., Ex. D at 5.)  Rule R-37

provides, in relevant part, that "[t]he arbitrator may take whatever interim measures he or she

deems necessary, including injunctive relief and measures for the protection or conservation of

property and disposition of perishable goods."  *See* AAA Rules, R-37(a).

On February 15, 2024, GEM filed the Related Action and asked the Court to confirm the

arbitrator's Interim Award pursuant to the FAA and New York Convention.  (*See* Application.)

On March 1, 2024, Plaintiffs filed their Cross-Motion to vacate the Interim Award and to stay

enforcement of the Interim Award pending this Court's resolution of the Securities Action.  (*See,

e.g.*, Previous Memo.)  On March 1, 2024, the Court issued an order terminating both GEM's

Application and Plaintiffs' Cross-Motion and directing GEM to re-file its Application "in the form

of a motion for summary judgment . . . ."  (*See* Related Action at ECF No. 41.)  On March 5, 2024,

the Court stayed all briefing in both the Securities Action and the Related Action pending a

conference with the Court, as well as the enforcement of the Interim Award.  (*See id.* at ECF Nos.

43 and 44.)

## II.   THE COURT SHOULD STAY CONFIRMATION OF GEM'S APPLICATION TO CONFIRM THE INTERIM AWARD AND ANY DAMAGES DETERMINATION BY THE ARBITRATOR PENDING THIS COURT'S RESOLUTION OF THE SECURITIES ACTION

### A.   The Arbitration Does Not Have Preclusive Effect on the Securities Action

The gravamen of Defendants' request to stay the Securities Action[3] in favor of the pending

Arbitration is that the arbitrator's passing reference in footnote 14 of the Liability Award to certain

defenses asserted by Plaintiffs should be given preclusive effect under the doctrines of res judicata

and/or collateral estoppel.  (*See* Securities Action at ECF No. 26, pp. 1-2.)  For the reasons

discussed below, neither doctrine should be invoked as a preclusive bar to the Securities Action.[4]

#### 1.   Plaintiffs' Claims[5] in the Securities Action are Not Barred by Res Judicata

To establish that the doctrine of res judicata bars a claim in federal court based on prior

determinations in arbitral proceedings, "a party must show that (1) the previous action involved an

---

[3] On January 3, 2024, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[4] In addition to the arguments herein, Plaintiffs respectfully refer the Court to the arguments submitted in their Opposition to Defendants' Request for Stay, (*see* Securities Action at ECF No. 35), and add that the cases cited by Defendants in support of their stay request are distinguishable from the case at bar.  *See, e.g.*, *Sircar v. City Univ. of New York*, No. 1:23-cv-06304 (KPF) (S.D.N.Y. Oct. 27, 2023), ECF No. 13 (granting *unopposed* letter motion because "the decision in the arbitration will likely impact this action."); *Kuehne + Nagel Inc. v. Hughes*, 2022 WL 2274353, at *8 (S.D.N.Y. June 23, 2022) (granting motion to *compel* arbitration where the subject contract contained an alternative dispute resolution provision).

[5] Plaintiffs assert two claims in the Securities Action: (i) a claim for recission against GEM pursuant to Section 29(b) of the Exchange Act for violating Section 15(a) of the Exchange Act by effecting (making) the Warrant as unregistered dealers (hereinafter, the "15(a) Claim"); and (ii) a claim against Mr. Brown for violating Section 20(a) of the Exchange Act by acting as the control person of GEM in connection with GEM's transactions as unregistered dealers.  (*See* Securities Action at ECF No. 1 (the "Compl."), pp. 11-12.)

adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (internal citations omitted).

Defendants argue that the 15(a) Claim in the Securities Action was previously raised in the Arbitration. (*See* Securities Action at ECF No. 26, pp. 1-2.) In support of this assertion, Defendants point to Plaintiffs' two vague defenses presented in their Answer to GEM's Amended Statement of Claim: ███████████████████████████████████████████

████████████████████████████████████████████████████████████ Those equivocal *defenses*, however, do not constitute the same *affirmative claim* asserted in the Securities Action—rescission pursuant to Section 29(b) because "[t]he Warrant was made in violation of Section 15(a) of the [Exchange] Act . . . ." (Compl. at ¶ 51.) ████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████ Accordingly, absent any reference to Section 15(a) of the Exchange Act, the defenses raised in the Arbitration cannot be interpreted to constitute the same claims in the Securities Action.

Turning next to whether Plaintiffs' 15(a) Claim *could* have been raised in the Arbitration, courts in this district have refrained from applying res judicata to claims that arise from an agreement distinct from those previously arbitrated, particularly when the subject agreement of the litigation does not contain an arbitration provision. *Purjes v. Plausteiner*, 2016 WL 552959, at *5-6 (S.D.N.Y. Feb. 10, 2016) (applying *Pike* to determine that claims under a non-arbitrable agreement *could not* have been included in an arbitration proceeding arising under a separate agreement).

Here, the Warrant—the subject agreement of the Securities Action—not only lacks an arbitration provision, but it also includes an express jurisdiction and venue provision requiring that "venue for any dispute arising under th[e] Warrant will lie exclusively in the state or federal courts located in New York, and the parties irrevocably waive any . . . argument that New York is not the proper venue.  The Issuer and Holder[6] irrevocably consent to personal jurisdiction in the state and federal courts in the state of New York."  (*See* Cheney Decl., Ex. 4 at § 11.)[7]  Because the Warrant does not contain an arbitration provision, "it is not at all clear that Plaintiff[s'] [Exchange Act] claim could have been included as a claim in the Arbitration."  *See Purjes*, 2016 WL 552959, at *6.  Accordingly, the arbitration proceedings do not bar Plaintiffs' claims in the Securities Action under the doctrine of res judicata.  *See id.*

Insofar as the Court considers whether Plaintiffs nonetheless "should have" raised their claims in the Arbitration despite the Warrant's exclusive jurisdiction provision, the Second Circuit evaluates "whether the claim was sufficiently related to the claims that were asserted in the first proceeding[.]"  *Pike*, 266 F.3d at 91.  To demonstrate that a claim *should* have been previously asserted, a party must show that the prior and current claims "involve 'the same transaction or connected series of transactions [and that] . . . the same evidence is needed to support both

---

[6] During the Conference, GEM's counsel asserted that the venue provision in the Warrant is not applicable to GEM, but rather, only applicable to any subsequent transferee or "Holder" of the Warrant.  Section 8 of the Warrant, however, defines "Holders" to mean "the Persons who shall from time to time own th[e] Warrant . . . ."  (*See* Cheney Decl., Ex. 4 at § 8.)  GEM unquestionably owns the Warrant and is, therefore, bound by the Warrant's venue provision.

[7] The parties, thus, consented to exclusive jurisdiction in this Court and irrevocably waived any objection thereto as it relates to the Warrant.  As such, had Plaintiffs contested the validity of the Warrant during the Arbitration, as they do here in the Securities Action, they would have been in breach of the clear language in Section 11 of the Warrant.  To the extent the Court finds Section 11 of the Warrant inconsistent with the arbitration provision in the SPA, it is well settled in New York that any ambiguity subject to confusion should be construed against the drafter—which, in this case, was counsel for Defendants.  *See John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289, 294 (S.D.N.Y. 1987) ("If the forum selection clause is ambiguous in that it is susceptible of two reasonable meanings, it will be construed against the party who drafted it.").

claims.'" *Citadel Broad. Corp. v. Dolan*, 2009 WL 4928935, at *8 (S.D.N.Y. Dec. 21, 2009) (quoting *Pike*, 266 F.3d at 91).

In *Dolan*, the court explained that, in order to invoke res judicata, the subsequent claims must be "related in time, space, or origin to the facts underlying" the previous claims. *Dolan*, 2009 WL 4928935, at *8. Moreover, when one claim "greatly expand[s] the facts that would have to be considered, and would not so obviously have to be litigated simultaneously that one would expect both sets of claims would necessarily be brought together," res judicata does not apply because those claims are not deemed to be among those that "could have been brought." *Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 346 (S.D.N.Y. 2018) (refusing to apply res judicata to workplace discrimination claims following a prior determination of a termination claim).

Here, Plaintiffs' claims under the Exchange Act are broader in scope and unrelated to the time, space, or origin of the claims raised in the Arbitration. The claims presented in the Arbitration pertain to the SPA and RRA and are substantively and chronologically bound to Plaintiffs' alleged breaches of those agreements. Conversely, the claims arising under the Exchange Act involve GEM's conduct with unrelated third-party issuers before, during, and after the subject transaction. (*See* Compl. at ¶¶ 1-3, 21-38 (alleging facts that demonstrate GEM's general business model of violating the federal securities laws by operating as unregistered dealers, including securities transactions with different issuers from years prior). Plaintiffs' claims under the Exchange Act, therefore, "greatly expand the facts that would have to be considered" in the Arbitration to determine whether Plaintiffs breached the SPA and RRA, and "would not so obviously have to be litigated simultaneously that one would expect both sets of claims would necessarily be brought together." *See Lobban*, 345 F. Supp. 3d at 346. While there is overlap

between some facts demonstrating GEM's conduct as an unregistered securities dealer and its securities transactions with Plaintiffs, the operative nucleus of facts in the Arbitration arises from the SPA and RRA, not the Warrant, which underlies the claims brought by Plaintiffs under the Exchange Act.

Even if Plaintiffs, *arguendo*, *could* have raised the Exchange Act claims as counterclaims in the Arbitration, permissive counterclaims in prior arbitrations conducted in New York are not precluded from being asserted in a subsequent litigation under res judicata, and neither New York law nor the AAA Rules provide for compulsory counterclaims. *See Dolan*, 2009 WL 4928935, at *8 (holding that permissive counterclaims were not barred by res judicata); AAA Rules, R-5(b) (providing only that "[a] respondent may file a counterclaim"); *see also In re Ridgemour Meyer Properties, LLC*, 2016 WL 5395836, at *4 (Bankr. S.D.N.Y. Sept. 27, 2016) (citations omitted) ("*[R]es judicata* does not bar the assertion of a permissive counterclaim in a subsequent action.").

Granted, "a party is not free to remain silent in an action in which he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *Nat'l Air Cargo Grp., Inc. v. Maersk Line Ltd.*, 2019 WL 4735426, at *13 (S.D.N.Y. Sept. 27, 2019) (citations omitted). Here, however, Plaintiffs are simply bringing a claim (in the proper forum pursuant to Section 11 of the Warrant) pertaining to GEM's business conduct that extends beyond the limited transactional nucleus giving rise to the Arbitration. Additionally, the Securities Action cannot be characterized as "a second suit on the basis of a pre-existing claim for relief that would impair the rights or interests established in the first action," *see Classic Autos., Inc. v. Oxford Res., Corp.*, 204 A.D.2d 209 (1st Dep't 1994), because the claim for relief in the Arbitration is for breach-related remedies under the SPA and RRA, whereas the requested relief in the Securities Action is the statutory remedy of rescission

under Section 29(b).  (Compl. at 14.)  Finally, as an unconfirmed award, the Liability Award is *not* "a final *judgment* on the merits."  *Nat'l Air Cargo Grp., Inc.*, 2019 WL 4735426, at *13 (emphasis added) (quoting *Corbett v. MacDonald Moving Servs.*, 124 F.3d 82, 87-88 (2d Cir. 1997)) ("To determine whether the doctrine of *res judicata* bars a subsequent action, we consider whether . . . the prior decision was a final judgment on the merits . . . .").  Accordingly, it remains unclear whether any rights or interests have, in fact, been established.

### 2.     Plaintiffs' Claims in the Securities Action are Not Barred by Collateral Estoppel

Collateral estoppel is permissible if: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted).  In addition to these four factors, the Court must also assure itself that the application of collateral estoppel is fair.  *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

"[T]he party asserting preclusion bears the burden of showing *with clarity and certainty* what was determined by the prior judgment," and "[i]ssue preclusion will apply only if it is *quite clear* that this requirement has been met."  *Postlewaite v. McGraw-Hill, Inc.*, 333 F.3d 42, 49 (2d Cir. 2003) (emphasis in original) (quoting *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997)).  A party seeking "'[t]o obtain summary judgment on collateral estoppel grounds' based on an arbitration award 'must make a showing so strong that no fair-minded jury could fail to find that the arbitrator necessarily denied the claim for the reason they

10

assert.'" *Postlewaite*, 333 F.3d at 49 (quoting *BBS Norwalk*, 117 F.3d at 677).  "This is a heavy

burden that cannot be met with evidence that is 'equivocal.'" *Postlewaite*, 333 F.3d at 49 (quoting

*BBS Norwalk*, 117 F.3d at 677).  For the reasons discussed below, Defendants do not meet this

burden.

> **i.      The Issue of Whether the Warrant was Made in Violation of Section 15(a) of the Exchange Act was Not Raised in the Arbitration**

With respect to the first element of collateral estoppel, an issue is raised when it is

"presented to the arbitrators" and "specified . . . in [the party's] first communication to the

arbitrators." *Dundon v. Komansky*, 15 F. App'x 27, 30 (2d. Cir. 2001); *see Emilio v. Spring

Spectrum, L.P.*, 68 F. Supp. 3d 509, 517 (S.D.N.Y. 2014) (deeming an issue discussed in a "motion

for summary disposition during the arbitration" to be raised, satisfying the requirement for

collateral estoppel); *O'Neill v. Merrill Lynch, Pierce, Fenner & Smith*, 654 F. Supp. 347, 351-52

(N.D. Ill. 1987) (finding that issues were identically raised because "every transaction listed in

plaintiff's Amended Complaint was listed in her Statement of Claim before the arbitration panel");

*F.T. Mar. Servs. Ltd. v. Lambda Shipholding Ltd.*, 533 F. Supp. 3d 149, 156-57 (S.D.N.Y. 2021)

(finding that an issue was raised in a prior foreign judicial action where there was "extensive

briefing raising the issue").

Collateral estoppel should not be invoked to preclude a district court action where, as here,

a party asserts a Section 29(b) claim for rescission under the Exchange Act, which itself is

predicated on a violation of Section 15 of the Exchange Act, and that identical claim is not

presented during the arbitration proceedings.  *See Boguslavsky v. Kaplan*, 159 F.3d 715, 722 (2d

Cir. 1998) (finding that the plaintiff "properly asserted a claim under § 29(b) of the [Exchange]

Act which, like the § 20(a) 'controlling person' claim, was not presented to, and thus, not litigated

in, the [arbitration] proceeding."). Noting that the plaintiff's rescission claim may not have necessarily been "artfully pleaded," the *Boguslavsky* court nonetheless found that "the assertion of the claim was not precluded by the arbitration proceeding[,]" and "le[ft] open the question thus presented—i.e., whether [plaintiff] is entitled to rescission of his customer agreement with SRSI because SRSI failed properly to register as a securities broker . . . ." *Id.*

The Second Circuit's reasoning in *Boguslavsky* should apply with equal force to the case at bar. Here too, Plaintiffs assert a claim for rescission under Section 29(b) of the Exchange Act, which is predicated on a violation of Section 15(a) of the Exchange Act, (*see* Compl. at ¶¶ 50-58), and was not raised in the Arbitration. While Defendants contend that Plaintiffs "raised the same argument in the Arbitration," (*see* Securities Action at ECF No. 26), they cannot point to a single reference to Section 15(a) of the Exchange Act in the Arbitration. ███████████████████ ████████████████████████████████████████████ a violation of Section 15(a) was never raised. ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

Section 29(b) is not a stand-alone claim that can be raised without asserting a predicate violation of the Exchange Act. Rather, Section 29(b) is a statutory vehicle through which an aggrieved party can rescind a contract made in violation of any provision of the Exchange Act or any contract where performance involves a violation of the Exchange Act. *See* 15 U.S.C. § 78cc(b); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 387 (1970) ("The lower federal courts

have read [Section] 29(b) . . . as rendering the contract . . . voidable at the option of the innocent party"; "[t]his interpretation is eminently sensible."); *Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 559 (5th Cir. 1982) ("[A] person can avoid a contract under section 29(b) if he can show that (1) the contract involved a 'prohibited transaction,' (2) he is in contractual privity with the defendant, and (3) he is 'in the class of persons the Act was designed to protect.'"); *Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357, 361 (5th Cir. 1968) (finding that defendant was engaged as a dealer, in violation of section 15(a)(1), where it "purchased many church bonds prior to the ones in question for its own account and as a part of its regular business and sold some of them.")

Stated differently, the issue of whether "[t]he Warrant was made in violation of Section 15(a) of the [Exchange] Act," (*see* Compl. at ¶ 51), is separate and distinct from ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Accordingly, Defendants cannot demonstrate that the identical issue was raised in the previous proceeding.

> **ii.   The Issue of Whether the Warrant was Made in Violation of Section 15(a) of the Exchange Act was Not "Actually Litigated and Decided" in the Arbitration**

Even if the Court were to determine that the identical issue of whether the Warrant was made in violation of Section 15(a) of the Exchange Act was "actually raised" in the Arbitration (it was not), Defendants would still need to demonstrate that it was "actually litigated and decided." Courts find that issues were "actually litigated and decided" in a previous arbitration where the arbitrator properly considered and resolved those issues. *See Emilio*, 68 F. Supp. 3d at 517 (finding

an issue was actually decided because "the arbitrator considered and summarily rejected the argument").

Here, the arbitrator's commentary in footnote 14 of the Liability Award cannot be reasonably interpreted as a final decision on the merits of Plaintiffs' claims under the Exchange Act. As an initial matter, ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ If nothing else, this statement establishes that the issue of whether the Warrant was made in violation of Section 15(a) of the Exchange Act—even if the Court were to consider it as encompassing the ████████████████████████████

██████████████████—was certainly not litigated in the Arbitration.

Furthermore, the arbitrator's statement that █████████████████████████████

███████████████████████████████████████████████████████

█████████████████, is not the same as "actually deciding" on the merits whether the Warrant was made in violation of Section 15(a) because GEM is an unregistered securities dealer. Such a finding would have required the arbitrator to "actually consider" (1) whether GEM is a securities dealer within the meaning of the Exchange Act,[9] (2) whether GEM is registered as a dealer with the SEC or any other regulatory body, and (3) whether the Warrant was, thus, made in violation of Section 15(a), by conducting a thorough analysis of the relevant statutes, interpreting the

_____

[8] ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

[9] Section 3(a)(5)(A) of the Exchange Act defines a "dealer" as "any person engaged *in the business* of buying and selling securities . . . for such person's own account." 15 U.S.C. § 78c(a)(5)(A) (emphasis added).

14

controlling case law, and applying the facts before him to "actually decide" the issue.[10] *See Golden v. O'Melveny & Myers LLP*, 2020 WL 1640020, at *9-10 (C.D. Cal. Apr. 1, 2020) (finding that "[t]he Arbitrator actually decided issues in the Final Award" by thoroughly considering and determining the elements of the claim at issue in the second litigation), *aff'd*, 2021 WL 3466044 (9th Cir. Aug. 6, 2021).  There is nothing in the record that demonstrates that the arbitrator made any such findings.

>        iii.    **Plaintiffs Did Not Have a Full and Fair Opportunity to Litigate the 15(a) Issue in the Arbitration, Nor was Resolution of that Issue Necessary to Support the Liability Award in the Arbitration**

Courts in the Second Circuit generally consider four factors in determining whether a party had a full and fair opportunity to litigate an issue for the purposes of applying collateral estoppel: "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of the litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law, and the foreseeability of future litigation." *Redd v. Leftenant*, 2017 WL 3973926, at *6 (E.D.N.Y. Sept. 7, 2017) (quoting *Goodson v. Sedlack*, 212 F. Supp. 2d 255, 257 (S.D.N.Y. 2002)), *aff'd*, 737 F. App'x 603 (2d Cir. 2018).  At least two of those factors weigh in favor of Plaintiffs, as the Exchange Act claims

---

[10] As recently articulated by the Eleventh Circuit Court of Appeals:

> The "centerpiece" of the Exchange Act's dealer definition is the word "business," which is "a particular occupation or employment habitually engaged in for *livelihood* or *gain*."   "While evidence of merely *some* profits from buying and selling securities may alone be inconclusive proof, the defendants' *entire* business model was predicated on the purchase and sale of securities."

*SEC v. Almagarby*, 92 F.4th 1306, 1317 (11th Cir. 2024) (emphasis in original) (internal citations omitted).  No such analysis was conducted in the Arbitration.

asserted in the Securities Action do not address the SPA and RRA related claims in the Arbitration, nor were they litigated to any extent in the arbitration proceedings below.

Courts have also adopted the Restatement (Second) of Judgment full-and-fair factors, which disfavor giving preclusive effect to the prior proceeding when "[t]reating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved." *Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*, 1993 WL 42786, at *8 (S.D.N.Y. Feb. 17, 1993) (quoting Restatement (Second) of Judgments § 29 (1981)). The Supreme Court has held that arbitral awards should not be given preclusive effect when (1) "Congress intended the statute[] at issue . . . to be judicially enforceable" and (2) "arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under [that statute]." *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 285, 289 (1984). Both factors weigh in favor of Plaintiffs here, as Congress intended the Exchange Act to be judicially enforceable. *See Walzer v. Muriel Siebert & Co.*, 2010 WL 4366197, at *3, *14 (D.N.J. Oct. 28, 2010) (reaffirming previous ruling that the relevant FINRA arbitration did not preclude plaintiff's Exchange Act claims because, among other things, "there [was] no question that Congress intended the Exchange Act to be judicially enforceable"). Indeed, the Exchange Act "vests exclusive jurisdiction . . . in the federal courts" over suits brought under its auspices. *Id.* at *3 (citation omitted).

Finally, the proponent of collateral estoppel "has the burden to make" a showing and "must clearly establish" that an issue was necessarily decided. *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152-53 (2d Cir. 2006) (denying preclusive effect to a prior administrative hearing because the ALJ's rejection of a claim was not necessary to "[t]he decisive issue" in the prior proceeding). "An issue that is necessarily decided must have been both actually decided . . .

16

and necessary to support a valid and final judgment on the merits."  *Id.* at 149 (internal quotation

marks omitted).  Here, Plaintiffs' claims and/or defenses under the Exchange Act were never raised

or pursued in the Arbitration.   As such, resolution of Plaintiffs' defenses

and claims under the Exchange Act could not possibly have been necessary to support the

arbitrator's findings on liability.

> **B.**     **This Court Should Stay GEM's Application and Any Damages**
> **Determination by the Arbitrator Pending Resolution of the Securities Action**

As discussed in the Previous Memo, if the Warrant was indeed "made in violation" of

Section 15(a) of the Exchange Act, it "shall be void" and subject to rescission.  (*See* Previous

Memo at 20 (citing 15 U.S.C. § 78cc(b)).)  Such a finding would, in turn, render the Interim Award

moot, as the $24,114,921 that MAI was ordered to deposit into escrow was based on the minimum

value of the Warrant sought by GEM for breaches of the SPA and RRA.  If the Warrant is, in fact,

void, then that amount would necessarily be reduced to zero.  The issues presented in the Securities

Action must, therefore, be resolved before the Court can fully adjudicate GEM's Application.

Likewise, any pending arbitration proceedings pertaining to final damages must also be stayed in

the interest of judicial economy and efficiency.

"[T]he power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants."  *Diatek Licensing LLC v. Estrella Media, Inc.*, 2022 WL 5108090, at

*1 (S.D.N.Y. Oct. 4, 2022) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  Courts

typically consider five factors in deciding whether to grant a stay: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Diatek*, 2022 WL 5108090, at *1 (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

Courts in this district have routinely stayed an action pending the resolution of an independent proceeding where, as here, the resolution or outcome of that proceeding bears upon the action. *See, e.g.*, *Finn v. Barney*, 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008) ("A stay may similarly be appropriate when awaiting 'the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed'"; staying case where resolution of a related class action would impact the plaintiffs' claims in the case and defendants' contractual right to demand arbitration of the claims); *see also Diatek*, 2022 WL 5108090, at *2 (staying case pending decision in parallel proceeding that would decide controlling point of law in case).

The aforementioned factors indisputably favor staying GEM's Application and any damages determination by the arbitrator pending resolution of the Securities Action, as MAI would suffer irreparable harm in the absence of a stay. As explained in the Previous Memo, if MAI is forced to preserve $24 million in escrow ███████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ A stay, however, would serve the interests of this Court by promoting "judicial economy and efficiency" and

avoiding potentially "inconsistent adjudication[s]." *Finn*, 2008 WL 5215699, at \*3; *Diatek*, 2022 WL 5108090, at \*2.  There is also nothing—on the face of the Interim Award or GEM's Application for the matter—to suggest that the fourth and fifth factors articulated above weigh against a stay.  As such, GEM's Application and any pending arbitration proceedings to address damages should be stayed pending the resolution of the Securities Action.

**III.   THERE IS NO AUTHORITY THAT STANDS FOR THE PROPOSITION THAT A FEDERAL COURT POSSESSES THE AUTHORITY TO ORDER THE TYPE OF RELIEF ENTERED BY THE ARBITRATOR IN THE INTERIM AWARD**

Although the Court may confirm, deny confirmation, or vacate the Interim Award under the procedures set forth in the FAA and New York Convention, *see* 9 U.S.C. §§ 9, 10, 207, there is simply no authority to suggest that a federal court possesses the power to provide the sort of relief entered by the arbitrator in the Interim Award and order MAI to transfer money directly into an escrow account.  To be sure, federal district courts possess the authority to issue provisional measures, including measures in aid of arbitration.  Under Rule 64 of the Federal Rules of Civil Procedure, for instance, a court may impose "every remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including arrest, attachment, garnishment, replevin, sequestration, and "other corresponding or equivalent remedies."  *See* Fed. R. Civ. P. 64.  New York law, in turn, provides that the Court "may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitration that is pending or that is to be commenced inside or outside [New York], whether or not it is subject to the [New York Convention], but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."  *See* N.Y. CPLR § 7502(c).

19

Under New York law, a writ of attachment is the appropriate remedy for securing a judgment with property that is not the subject of the action. *Polish Am. Res. Corp. v. Byrczek*, 270 A.D.2d 96, 96-97 (1st Dep't 2000). However, that remedy differs in material ways from AAA Rule R-37, and not does provide the Court with the authority to order MAI to place funds directly in escrow.

As an initial matter, whether an order of attachment is requested on notice or ex parte, it must be sought by motion or application for that specific form of relief before a court can order such a remedy. *See* N.Y. CPLR §§ 6210, 6211, 7502(c). Even if GEM had moved for an order of attachment (it has not), the Court would still lack the authority to order MAI to transfer money into escrow. Courts have generally only entered orders of attachment in aid of arbitration where the evidence shows that the party has begun to dissipate, move, or otherwise encumber assets, even in circumstances where a defendant finds itself in a precarious financial condition. *See, e.g.*, *Cty. Natwest Sec. Corp. USA v. Jesup, Josephthal & Co.*, 180 A.D.2d 468 (1st Dep't 1992) (ordering attachment in aid of arbitration where the respondent was "no longer actively functioning," there was some "indication that [the respondent] ha[d] engaged in liquidating and transferring assets," and there was "a high probability that [the respondent would] be unable to meet any debts determined by the arbitrator to be owed to [the petitioner]"); *Habitations Ltd. v. BKL Realty Sales Corp.*, 160 A.D.2d 423, 424-25 (1st Dep't 1990) (granting attachment where the evidence demonstrated that the individual respondent had stripped the corporate respondent of its assets, "historically failed to pay his creditors," and "stated to others that he intends to remove his assets from [New York] and does not intend to satisfy the award"). There have been no such findings here. █████████████████████████████████████████████████

████████████████████████████████████████

In addition, under New York law, a party seeking attachment, including one in aid of arbitration, must post a bond.  *See* N.Y. CPLR § 6212(b); *see also* N.Y. CPLR § 7502(c).  Further, the property that is subject to the writ must be located in New York.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Advanced Emp't Concepts, Inc.*, 269 A.D.2d 101 (1st Dep't 2000) ("In order to be subject to attachment, property must be within the court's jurisdiction, and the mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment merely by serving a New York branch.").  In addition, any order of attachment is directed to the sheriff of the county where the property is located, and the property remains within the actual or constructive possession of the sheriff.  *See, e.g.*, N.Y. CPLR § 6211; N.Y. CPLR § 6215 (outlining procedures for sheriff to levy upon personal property by "taking the property into his actual custody"); N.Y. CPLR § 6216 ("The sheriff shall levy upon any interest of the defendant in real property by filing with the clerk of the county in which the property is located a notice of attachment . . . .").  None of these aforementioned requirements are found in AAA Rule R-37.

In short, a federal court does not have the authority to enter an order akin to the Interim Award.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that GEM's Application to confirm the Interim Award and any damages determinations in the Arbitration by stayed pending this Court's resolution of the Securities Action.  Additionally, Plaintiffs respectfully request that the Court refuse to enforce the Interim Award at this time.

Dated:  New York, New York              Respectfully Submitted,
        March 29, 2024

        By:  */s/ David K. Momborquette*
            David K. Momborquette
            Antonios G. Koulotouros
            **MCDERMOTT WILL & EMERY LLP**
            One Vanderbilt Avenue
            New York, New York 10017
            (212) 547-5400
            dmomborquette@mwe.com
            akoulotouros@mwe.com

            -and-

        By:  */s/ Mark R. Basile*
            Mark R. Basile
            Waleed Amer
            **THE BASILE LAW FIRM, P.C.**
            390 N. Broadway, Suite 140
            Jericho, New York 11753
            (516) 455-1500
            mark@thebasilelawfirm.com
            waleed@thebasilelawfirm.com

            *Attorneys for Plaintiffs-Respondents Mullen*
            *Automotive, Inc. and Mullen Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 29, 2024, I caused the foregoing Memorandum of Law to be served on the following counsel for Defendants via email.  The following counsel have confirmed that they represent Defendants in the above-captioned actions and provided written consent to electronic service via email.

Jonathan A. Patchen
WILLKIE FARR & GALLAGHER LLP
333 Bush Street
San Francisco, CA 94104
(415) 858-7594
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
mtayer@willkie.com
jgarbacz@willkie.com

*/s/ Mark R. Basile*
Mark R. Basile
