

January 3, 2025

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007

    *Re: GEM Yield Bahamas Limited, et al. v. Mullen Technologies, Inc., et al., No. 1:24-cv-01120-KPF*
    *Mullen Technologies, Inc. and Mullen Automotive, Inc., No. 1:23-cv-11268-KPF*

To the Honorable Katherine Polk Failla:

The undersigned is counsel for Plaintiff GEM Yield Bahamas Limited and GEM Global Yield LLC SCS in 1:24-cv-01120-KPF, and for Defendants GEM Global Yield LLC SCS, GEM Yield Bahamas Limited, and Christopher Brown in 1:23-cv-11268-KPF (collectively referred to as "GEM"). Since our last correspondence on October 22, 2024, further alarming actions have been taken by Mullen Automotive that warrant immediate attention and concern.

On June 11, 2024, the Court granted GEM's motion for summary judgment and confirmed the Interim Measures Award issued by Arbitrator Mark C. Morril on January 24, 2024. The Interim Measures Award ordered Mullen Automotive to deposit into escrow $24,114,921.00 within "45 days" of January 24, 2024. ECF No. 1-9. P. GEM was awarded that relief in light of what the Arbitrator found was an urgent risk that Mullen Automotive would not be able to satisfy a final award in the Arbitration. GEM filed its application to confirm in advance of the deadline for Mullen Automotive to comply with the Interim Measures Award—March 9, 2024—anticipating that Mullen Automotive   the order until this Court expressly required it to comply. Over the last ten months, the Court has made a series of orders related to the ordered escrow deposit. All of those orders ran to the same end: that Mullen Automotive was ordered to be "ready, willing and fully able" to comply with the Interim Measures Award promptly upon its confirmation. (Case 1:24-cv-01120-KPF Document 90, Pg. 2). Mullen Automotive has a consistent track record of defying the Courts orders and continues to prove it has no intention of "rectifying its lack of compliance" (Case 1:24-

# Nathaniel Muller
## Law Offices

cv-01120-KPF Document 93). Despite several capital raises and continuous dilution, Mullen Automotive still has not taken any steps to comply with the Courts orders regarding the Interim Measures Award. We urge the Court to take immediate action to secure the funds specified in the interim measures award by directing Mullen Automotive to escrow these funds without delay. Prompt action is vital to ensure compliance and safeguard GEM's interests.

In parallel, the absence of a ruling from this Court on the Confirmation of the Final Award is a critical issue, that has inadvertently facilitated Mullen Automotive's evasive actions.

On July 8, 2024, Mullen Automotive claimed that it "desire[d] to 'rectify its lack of compliance'" with the Court's Orders and argued that "Mullen Auto should be afforded an opportunity to secure additional financing, escrow a portion of the proceeds that it receives from the sale of securities in connection with the ELOC Transaction, and, if feasible, also escrow shares of Mullen Auto." This commitment was clearly outlined on pages 11 and 12 of the July 8, 2024 Memorandum of Law drafted by McDermott Will & Emery LLP (Case 1:24-cv-01120-KPF Document 93).

Mullen Automotive has successfully completed a number of steps it described as conditional and uncertain in its July 8, 2024 response to the Court's OSC. (See ECF 93 at 7-9; ECF 94. And its Response to Petitioners' July 30, 2024 Letter Submission. See ECF 109 at 1-2). This includes successfully securing shareholder approval for the ELOC Transaction and Note Transaction described in that submission (See July 12, 2024, Mullen Automotive 8-K available at https://www.sec.gov/edgar/browse/?CIK=1499961). Additionally, the Company has raised a minimum of $58.5 million through these transactions since its response to the Court's OSC on July 8, 2024 (as indicated in the Amendment No. 1 Form S-1 dated November 7, 2024, and an 8-K dated December 12, 2024).[1] Mullen has an upcoming annual shareholder

---

[1] Based on all the information provided, here's a detailed breakdown of funds Mullen Automotive (MULN) has raised from **noteholders via the Securities Purchase Agreement (Convertible Debt)** and the **ELOC** between **May 14, 2024, and December 31, 2024**:
**Funds Raised from Convertible Debt (Noteholders):**
1. **May 14, 2024**
   - Initial Notes:
     - **Principal Amount:** $13.2M
     - **Net Amount (after 5% discount):** $12.5M
2. **July 8, 2024**
   1. Exchange of Series E Preferred Stock for Notes:
      1. **Principal Amount:** $3.2M
      2. **Net Amount (after 5% discount):** $3.0M
3. **July 9, 2024**
   1. Obligated Purchases:
      1. **Principal Amount:** $10.5M
      2. **Net Amount (after 5% discount):** $10.0M
4. **July 15, 2024**
   1. Obligated Purchases:
      1. **Principal Amount:** $29.0M
      2. **Net Amount (after 5% discount):** $27.5M
5. **September 25, 27, and October 2, 2024**
   1. Additional Investment Rights:
      1. **Principal Amount:** $13.2M
      2. **Net Amount (after 5% discount):** $12.5M
6. **December 12, 2024 (Form 8-K)**

**Nathaniel Muller**
— Law Offices

meeting in late February 2025, and almost all of the proposals are related to the issuance of shares - including a **fifth** reverse split and issuing David Michery more stock for his Stock Performance Awards (he has already gifted himself as of now over six times Mullens current market capitalization, **before** the upcoming reverse split, which will award him even more shares) https://app.quotemedia.com/data/downloadFiling?webmasterId=90423&ref=318812904&type=HTML&symbol=MULN&cdn=cd44df72ccb86139c0e7a2d3b76410c3&companyName=Mullen+Automotive+Inc.&formType=PRE+14A&formDescription=Preliminary+proxy+statement+providing+notificati

Following our recent letter to the Court, dated October 22, 2024, Mullen disclosed that it has raised funds through the ELOC and Note Transactions:

- According to MULN's filing on November 7, 2024, (Amendment No. 1 to FORM S-1) - "On October 23, 2023, the Company issued 502,066 shares of Common Stock with proceeds of approximately $1.1 million pursuant to the terms of the ELOC Purchase Agreement. The Company can continue to access the ELOC if it files another registration statement with the SEC."[2]
- In MULN's filing on December 12, 2024 FORM 8-K, certain investors, purchased an additional aggregate principal amount of approximately $4.4 million (or $4.6 million including a 5% original

1. Additional Investment Rights:
    1. **Principal Amount:** $4.6M
    2. **Net Amount (after 5% discount):** $4.4M

**Funds Raised from Equity Line of Credit (ELOC):**
1. **October 23, 2024**
    - Issuance of 502,066 shares of common stock:
        - **Proceeds:** $1.1M

**Total Funds Raised:**
1. **Convertible Debt (Noteholders):**
    - May 14: $12.5M
    - July 8: $3.0M
    - July 9: $10.0M
    - July 15: $27.5M
    - Sept 25, 27, Oct 2: $12.5M
    - Dec 12: $4.4M
    - **Subtotal from Convertible Debt: $69.9M**
2. **Equity Line of Credit (ELOC):**
    1. October 23: $1.1M
    2. **Subtotal from ELOC: $1.1M**

**Grand Total:**
- **$69.9M (Convertible Debt) + $1.1M (ELOC) = $71.0M**

**Conclusion:**
Between **May 14, 2024, and December 31, 2024**, Mullen Automotive raised approximately **$71.0 million**:
- **$69.9 million** from convertible debt under the Securities Purchase Agreement, and
- **$1.1 million** from the Equity Line of Credit (ELOC).

---

[2] Mullen stated several times that they would use its ELOC to escrow funds. On July 8, 2024, Mullen stated that it "desire[d] to 'rectify its lack of compliance'" with the Court's Orders and argued that "Mullen Auto should be afforded an opportunity to secure additional financing, escrow a portion of the proceeds that it receives from the sale of securities in connection with the ELOC Transaction, and, if feasible, also escrow shares of Mullen Auto." ECF 95 at 12. We note that there has been activity as to such additional financing since July 8, 2024, including that the shareholder votes referenced in Mullen Auto's OSC response (ECF 95 at 11-12) has occurred and that Mullen Auto has already received at least some funds from the financings. See Mullen Automotive 8-K (July 12, 2024).



issue discount) of 5% Original Issue Discount Senior Secured Notes that are convertible into shares of the Company's common stock, par value $0.001 per share, and also received five-year warrants exercisable on a cash basis for an aggregate of 16,862 shares of Common Stock.

As a reminder, the total amount awarded to GEM in Arbitrator Morril's Final Award on May 10, 2024 in favor of GEM and against Mullen Automotive is approximately $36.5m The Arbitration was conducted between September 2021 and May 2024.

Mullen Automotive is deliberately undermining the authority of this Court concerning the Interim Measures Award. **Mullen is not only neglecting to place $24,114,921.00 in escrow, but also seems to be leveraging the resulting delay to raise funds through the same channels intended for the escrow, ultimately diverting those funds for their own benefit. This exploitation of the situation is unjust and warrants immediate scrutiny**.

Mullen Automotive is taking advantage of this Court's understanding concerning its claims of financial distress. As detailed in Mullen's SEC filings (Amendment No. 1 Form S-1 dated November 7, 2024, and an 8-K dated December 12, 2024), **Mullen has successfully raised at least $71 million from noteholders and the ELOC between May 14, 2024, and December 12, 2024**.

In light of these significant capital inflows, as well as the ELOC funds referenced earlier, it is unacceptable that Mullen has yet to deposit any portion of the escrow funds or take the necessary steps to establish the mandated joint escrow account. This behavior raises serious concerns regarding the company's efforts to utilize the funding to satisfy its already delinquent Court-ordered obligations.

This pattern of behavior reveals that the ongoing judicial delays are allowing Mullen Automotive to evade its legal responsibilities under this Court's orders and arbitration awards. Additionally, it seems to facilitate a scheme that benefits its self-enrichment. Such a situation is intolerable and must be addressed.

We sincerely appreciate Your Honor's attention to this pressing matter and respectfully urge the Court to provide swift guidance.

Respectfully submitted,

Nathaniel Muller, Esq.

Counsel for GEM Yield Bahamas Limited and GEM Global Yield LLC SCS